Hear ye, hear ye, hear ye. The United States Court of Appeals for the 11th Circuit is now open according to law. God save the United States and this honorable court. Good morning. We have four appeals to hear this morning. Council, I think you know the drill. We're familiar with your cases. We've read your briefs, the authorities cited in your briefs, at least portions of the record. So in the limited time that you have this morning, you should go straight to the heart of your argument, make the key points you want us to understand this morning. We're probably going to have some questions. Be mindful of the clock. I will not give you a warning. You can see the clock just as I can. So when your time is expired, please do wrap up your argument. If you're answering a question though from the court, you can finish your answer and you won't, if you have rebuttal time, you won't be eating into any of that time. But do be mindful of our time this morning. The first case to hear this morning is United States v. Maraval, Mr. Bryson. Good morning. May it please the court. Morning, your honors. My name is Rodney Bryson. I represent the appellant, Mr. Maraval. I represent him at trial as well. Mr. Maraval was a tax preparer and was originally charged in a superseding indictment with 16 counts of aiding in the preparation of false tax returns and three jury deliberations. A certain juror named G.D. that came to be known as G.D. sent a note to the court outlining statements that two unidentified jurors that came to be known as jurors A and B had made. And juror A said, I quote, I just don't like some of those people. It's hard to be impartial. Juror B said, and I quote, some of those witnesses don't even speak English. They shouldn't be in this country. And it's important that I point out to this court at this moment that a large percentage of the government's witnesses were black immigrants of Haitian descent that either could not speak English or if they did speak English, they did so with a heavy Creole accent, which is exactly the same background that the defendant, the appellant in this matter is. My client. Yeah. Quick question. Was a, was an interpreter used in the course of the trial? The interpreter was used in the course of the trial for some of the witnesses, not all the witnesses. And Mr. Marval did not use an interpreter. Thank you. So my client also being a black Haitian immigrant who spoke English with a Creole accent, after I heard these, these statements read by the judge, they, it was clear to me that they reflected racial and ethnic bias. So the first one doesn't necessarily, right. I mean, the, the, the, the first juror's comment, as I understand it, it later came out that the juror was speaking about the IRS. Well, judge, in it, when you look at the, the best place to look at to see is that right or not? Judge, I really can't tell from the hearing from docket entry one 75, the, the transcript on the motion for new trial, when juror GD is describing who I just don't, those people are referring to, she says IRS. But when I think of that, a lot of the IRS witnesses, the large percentage of those witnesses were Haitian immigrants. So just by talking to, to juror GD, a lot of people in America who don't like the IRS. Yes, judge, I understand that. But when you look at that comment, along with juror B's comment, it tends me to think, and I think that it, I think that you could look at it. Even the court said this when they granted an evidentiary hearing on my motion for new trial, that it's an over racist statement because it says it's hard. I don't like some of those people. It's hard to be impartial. And then when you look at the next statement, it says some of those witnesses don't speak English. They shouldn't even be in this country. Well, it's impossible to tell with the, with, with just juror GD's testimony, what the, what juror A was actually talking about. Yes, juror B, it looks a lot more, it seems a lot more racially prejudiced, but juror A's comment could be so as well, because if they're referring to the IRS witnesses, the large percentage of which were Haitian immigrants, if they were saying, if those are the people that they were referring to saying, I just don't like some of those people, it's hard to be impartial. Then it's an overt racist statement and it pertains to my client as well. Help me with the dialogue. When I looked at the transcript, I'm talking about page six of the transcript of the judge's colloquy with GD. Uh, the judge says, uh, tell me why once we started talking, it was evidence. Some of the jurors A and B were still in the thought process that they, that, that they initially made, uh, juror. Uh, so before we started basically reviewing the case again, all of the evidence, by the way, the case, the jurors, and I have to clarify this juror A was referring to the IRS juror B was referring to foreign people. Okay. Now later in the colloquy, he sort of GD lumps them together and refers to them as day when talking about bias. But I thought that it was pretty fair to say the, the objection to that a had was he was not, I mean, he had a, a real dislike for the internal revenue service and whatever bias there was, it was driven by the tax man rather than by race or national origin. Did I misread that? Well, respectfully, your honor, uh, you, it could be taken that way, but it could also be taken in a different light. The light that I explained, meaning that it's not the IRS that they don't like, but it's the IRS witnesses that they don't like. And if they had called these jurors in, uh, for an actual adequate hearing on these statements, then we would have been able to find out what they exactly meant. And that was never asked for. Yes, judge. I did. I asked, um, four or five times during the initial hearing after Ms. Diaz testified, you didn't ask for that judge. Um, the court, when it granted that, when it, when it issued its order, granting the motion for the evidentiary hearing, it asked the attorneys to submit proposed questions, which I did. And in those questions, it said, uh, one of those questions, uh, there was many in there. It's, um, it's not good entry. One 46, two of the questions were please identify juror a, and please identify juror B. It seemed to me though, that after, um, Ms. Diaz testified, it became pretty apparent that, um, these were, as she termed it offline comments that she, she told the judge that, um, she couldn't, couldn't really say that any bias infected, uh, their deliberations or their decision to convict, um, that the conviction was based on the evidence presented. Um, you didn't, you didn't ask for anything more than that. Well, because judge at that point in time, I had already asked numerous times and I had understood that the court had denied those requests. So at the end of the court's questioning, um, when he, and he said to me, Mr. Bryson, I took that to mean, uh, Mr. Bryson, do you understand my ruling? Uh, and at that point, I didn't ask any more questions where I didn't, I didn't have any more requests because I had requested that, uh, probably six, seven times, not in that actual hearing, but leading up to it. And the proposed questions I asked for it. And then again, during, um, uh, that hearing when the judge said, do you have any questions of juror GD? I asked him to ask her numerous questions about how, uh, certain those, those statements affected other jurors. Um, and, and just, uh, I respectfully submit that I had already asked the judge that the court to ask her those questions, uh, numerous times. And he had denied you preserve the record on the front end and you weren't obliged to do it again. Yes, your honor. Let me ask you a question about the standard that we ought to be applying here. The Supreme court tells us in Pena Rodriguez, what the standard is to do away with the privilege and set down the road of questioning a juror, which is a very, very dicey thing to do. The Supreme court tells us there must be a showing that one or more jurors made statements exhibiting overt racial bias that cast serious doubt on the fairness and impartiality of the jurors deliberations. And then it goes on to say that to qualify the statement must tend to show racial bias was a significant motivating factor in voting to convict. The judge obviously found that that standard was met and went forward. Second page is what I want to ask you about. What's the standard that governs ultimately on the decision of whether or not to find bias significant enough to set aside a conviction, whether or not it was a significant in Capra, we say, does the record indicate that any of the jurors prejudged guilt or innocence as a result of racial bias, back the standard, the same as the standard, the Supreme court carved out just for the initial question is a two-step process. I just want to know on the second step, what's the, what's the appropriate standard? And I'm not sure you ever explicated that with clarity. Judge, I believe that the standard is to question the jurors to see if they, develop a record and see if race was a significant motivating factor and their vote to, to convict the defendant. And unfortunately, after the judge found the first prong, the investigation and the interrogation that he did, or the questioning that he did have juror GD was inadequate to show whether or not race was significant, motivating factor. And as a matter of fact, Mr. Price, I could ask you a question. I think what judge Marcus might be getting at, and if I'm wrong, of course he can correct me, but putting aside the plane of an inadequate investigation by not interviewing a and B what standard of review do we apply to the district courts, ultimate determination that there was no racial bias inherent in the jury verdict? Is that a, is that a conclusion? Is that a finding of fact that we review for clear error? Is it discretion? Is it something else? I believe it's abuse of discretion, your honor. They didn't abuse. He abused it. The court lower court abused its discretion by not creating a record when presented with a clear statement, tending to show that racial animus was a motivating factor or that a clear statement of a racial or ethnically prejudiced comment was made by the jury. So let me ask you a final question. What would you have us do here? Would you have us remand to the district court to conduct further inquiry and bring the purported declarant in and question the, the, the speaker B? Unfortunately judge at this point, no, I don't, that wouldn't be the proper remedy because so much time has passed. We don't know where these jurors are. If there's, quite frankly, we don't know if they're still alive, if they, what their recollection is, and that wouldn't do anything. I think at this point, I think before we pull the trigger on a case, a substantial period of time to try that the district judge ought to make one more effort at that. We could find out easily enough whether B is available. If he is, you can bring him in and you can judge his credibility. I think you're right that with the passage of time, it becomes a good deal more difficult, but I'm just asking whether in your view, it's not worth stepping down that road at all. No judge, because I, I also don't think that just the questioning of jurors A and B would be adequate. I think we'd probably have to question all the jurors to see what, like, like, like this court had ruled in Heller that the judge there, he questioned all the jurors and they said, they said, thank you for doing that because you made a record for us to be able to judge, for us to be able to review. And I think that would be, you would have to question all the jurors to see what these statements, the effect these statements had on them. I think we understand your answer. You've saved three minutes for rebuttal. Let's hear from the government, Mr. Degelman. Thank you, Judge. May it please the court, Mark Detterman for the United States. Just to go directly to the point that juror GD, the complaining juror made it very clear that juror A was quote referring to the IRS and later in the transcript, she, she bolsters that by saying, and this is on page 14, that there was bias on both ends and that there were business people that apparently did not like the IRS. So I think it's very clear that that statement was about the IRS. There are four witnesses that testified at trial. And I think it's very clear that juror A statement and, and again, there's several statements from the complaining juror that there was bias on both sides that, that, that she saw. And there's no reason to doubt. What about juror B and did the district court abuse its discretion? I don't think so, your honor. First of all, the, the comment of juror B that that seems to go primarily toward the government's witnesses. It was the government's witnesses that needed interpreters. My understanding is that the defendant spoke fluent English and that he did so with a slight accent. But several of our witnesses needed interpreters. I'm sorry. He testifies in the case. The defendant did testify in the case. That's correct. Yes. And also the acquittals on six of the counts were, were, were the witness, the taxpayer client witness needed an interpreter. So that suggested that the bias went against the government actually. Again, we still argue that this was plain error because after the complaining juror testified, defendant, I mean, the defense counsel did not say why there was need to call the additional jurors. He seemed to actually ask. Mr. Detterman, why in terms of preservation of error, why was the defendant required to make that request again, having made it already before? Simply because we had heard the testimony of the complaining juror. And I think it was up to him explain to the judge why he believed that testimony was inadequate. And therefore we needed to call jurors a and B. I know the panel opinion. Well, the juror who testified explained in part that she didn't think that the curative instructions were enough, that she wasn't sure that there wasn't racial bias. So there's at least some aspect there for testimony that would warrant questioning of juror B. Do you disagree? Yes, Your Honor. And that's exactly the statement defense counsel should have brought up to the trial judge at the time after the testimony. Instead, after the judge said that he thought there wasn't evidence, defense counsel simply said, OK. So I don't think I think he had to preserve this at the end of the testimony and explain why the testimony was insufficient and why it required the additional testimony of at least juror B and the panel opinion. And why did the district court say it wasn't going to call jurors A and B? Well, in its initial order, it said it was going to call juror A. I mean, I'm sorry, the in its order granting the hearing, it said it was going to call the complaining juror. And it said that if the court finds additional evidence of racial, racially motivated verdict, it had discretion to take further measures. So the district court left open that it would call additional witnesses. But it was on notice, but it was on notice that district court was that the defendant wanted the additional jurors questioned as well, right? And yet made it that it was just going to proceed with Gigi for starters. Yes, that's true. Your point is that the district court also put defense the defense on notice that it would hear first from the complaining juror to determine whether any further testimony was needed and and had a very good basis for concluding that it wasn't and no one suggested that more inquiry was needed. Yes, Your Honor, that that is our argument that he should have explained to the district judge why more inquiry was needed. For example, maybe the district judge would have decided not to call juror A but decided to call juror B if he had argued that point. And you say that the the the complaining juror GD said there was you know, she she waffled she said she didn't know what was in people's minds and that people tend to stick to their beliefs. But when the court asked the ultimate question twice, and I'll only read the second time, the court asked, was there any indication in your mind that any of the 11 other jurors decision to convict was based on something other than the evidence? And the juror GD said, I don't think so. I don't think so. And that's on page 12. If I understand it, the juror said that they went over every single piece of evidence. And we all agreed on that for each of the 13 counts for which the defendant was convicted. If there were additional thoughts on race or discrimination, maybe they kept them inside. I wouldn't be able to comment on that. The judge asked once more. So it's your opinion, having been a party to these deliberations, that the conviction on count on 13 counts was based on the evidence presented, and the juror said, I believe it was. That's right. And she later basically repeated that statement on page 12. When the judge asked it for a second time. So I don't think the judge had any reason to call the additional jurors at that point, especially without an objection. And again, this court. It's not so much an objection, just a request. Just a request. And an explanation for why it would be. Moreover, this court has said that discretion to call deliberating jurors is very broad with the trial judge that actually discretion is at its zenith for calling jurors during deliberation. And the Supreme Court and this court have also said that the questioning of deliberating jurors should be as circumscribed as possible. And in Abel, this court said that to err, that error on the side of too little inquiry is the correct way to go that. And again, here we have the complaining juror who is likely who is sensitive to these issues. There's no reason to question her credibility in this case. She seemed to give very honest testimony about her opinions. And so there's no reason to question the finding and her testimony that it did not affect the ultimate verdict. And that was the conclusion of the hearing. Let me ask you the same question that I asked your colleague. When you get to the second step, the jury, the judge has already decided that the Pena standard was met. He has to go further and he conducts an inquiry of at least some or one of the jurors. Once he completes that task, I understand that we review the entire determination for abuse of discretion. But what's the standard that governs the trial court judge here? Is it the standard laid out in Pena, which is the standard for breaching the rule and going forward with questioning the juror, or is it something else? Is the standard, in other words, the standard of significant motivating factor in voting to convict, which is the standard the court laid out before a trial court could go even to that first step? Or is it something like what we said in Caporale? Does the record indicate that any of the jurors prejudged guilt or innocence as a result of racial bias? And maybe there's not a whipload of difference between that. I'm just trying to get you to tell me what we tell a district judge the standard is on the ultimate question. Yes, your honor. Well, Penny Rodriguez didn't specifically answer that, but I would say that it's expressly left that question open. Yes, they left that question open. But I would think that it's at least a direct finding based on compelling evidence that racial animus was a significant motivating factor in the decision to convict. The standard, whether it's compelling evidence or reasonable doubt, that's unclear. I mean, just to remove one juror, you have to have beyond a reasonable doubt that that juror was unable to reach a verdict based on the evidence. So it seems like the removing, you know, throwing out an entire verdict should be at least as high as the burden, as least as high as the standard for throwing out a single juror. So again, your honor, I don't know the answer to that. The Supreme Court didn't tell us, but I think those two standards are both. Presumably we ought to be saying something about what the appropriate standard is. And I'm just asking for your guidance. Yes. I mean, I think something more or less like what the Supreme Court used to take the first step. Yes. I think instead of just a predicate finding that there was a statement, there has to be a finding that it did actually, it was actually a significant motivating factor in this decision to convict and that, and to a high standard of evidence, either compelling evidence or beyond a reasonable doubt standard. Let me ask you, what do we make of it? It's a very interesting colloquy between the judge and the juror. And it's a very, and you could see why the judge was troubled. It's very hard to step down the road of questioning a juror. I've been there and you go too far one way or too far the other way, you're going to blow the whole case open. And so you have to ask, but you have to ask with great care and discretion. And so we give a whole lot of discretion to a trial judge. But at one point in this colloquy, the judge says, I'm talking on page 11. He says, okay, now, even though you indicated you thought some of the jurors were hurried during the deliberations, is it still your opinion at all? 12 jurors based their verdict upon the evidence. He's come at this question more than one, and it the ultimate question. The juror says, I would like to say yes to that, but I can only speak for myself. I know I just looked at the evidence. Some of the jurors were looking at the evidence exclusively, basically talk to the rest of the jurors about the evidence. Okay. Well, was there any indication in your mind that any of the other 12 jurors decision to convict was based on something other than the evidence? I don't think so. The court, okay. I don't think so. He says that twice. Then the judge asks him to step outside, speaks with the lawyers, and then brings him back in and thanks the juror for coming forward, et cetera, expecting at that point. I'm sure you incurred travel expenses coming back down here. I'm talking about 13 and 14, and I can assure you that you are reimbursed. I appreciate that, judge. It's my civil duty to be here. He doesn't just stop at that point. He revisits the issue. He comes back and he says at least this much. All of this having been discussed, you understand, and the judge just bringing him back in to thank him. The juror says, there is something that I would like to say if you don't mind. The court, yes, ma'am. The juror. The reason why I hesitated on your question the last time I was there and what he's perseverating about is the question, did my instruction do the trick or didn't it? The reason why I hesitated on your question the last time I was here is because I believe there was bias, period, from both ends. There were several business owners in the jury. That's he's referring to the IRS. The court cuts him off and says, well, now we can't. The juror, I understand. The court, we can't get into that. The juror, okay, outside of that, I understand. Okay, I'm sorry, blah, blah, blah, and it ends at that point. What do you suppose he meant when he said, I was here because there was bias, period. What are we to make of that, if anything? Well, your honor, all jurors come in to the courtroom with some amount of bias based on their experience in history. Again, she said that there was bias against the government, against the IRS. There was some bias there, but she had already explained that she thought that all the jurors deliberated and that the verdict was not based on bias. Again, she's saying that she believes that. She said that people keep these views in their head and she doesn't think they changed them. She says that the people that made the statement, she thinks that maybe they don't change their opinions. It's what you're saying is that after it became apparent in the earlier questioning that the verdict was actually based on the evidence, that a very reasonable way to view that statement by the juror is the complaining juror is kind of a defensive statement. Yes, your honor. I think that's a very reasonable view of that statement. Thank you. Might the judge have turned around and inquired further at that point about what he meant by that statement? There was bias, period, on both ends. Well, she had said that basically before. She had said that there was bias and that she did not think that people lost their bias. She thought that people kept their mindsets, but she explained what that bias was and she explained that it didn't seem to affect the deliberations and didn't affect the verdict. We know all jurors come into the courtroom with some bias. She had gone over that several times on what she meant by it. Let me ask you just one other very quick question. I know we're over our time, but the issues here are significant enough, at least for me, to explore it. If we were to conclude, if we were to come away with an abiding doubt or question here about what was going on, is there any wisdom in sending it back for further inquiry, or is it a practical matter? Is it too late in the day to revisit this issue and bring in the declarant, Juror B? Your honor, I don't think it's too late. I would think if the juror is alive, they'd still have some memory of their deliberations. I don't see how it will help because I think we have the best evidence. We have the evidence from the complaining juror about how deliberations went, and she was sensitive to these issues. So, Colleen- Let me ask you a different question. If I were to reject that view and say, I still come away with enough question or doubt in my of a matter of considerable importance, whether race or national origin or ethnicity motivated at least one juror to vote to convict, is it too late for us to send it back and ask the juror, the declarant about it? I'm talking about Juror B. Does it make any sense at this stage in the case? Or is it too late? Yeah, it's the same answer, your honor. I don't think it's too late to do that. I just don't think it's necessary because we've had the best witness testify regarding what happened during the trial and what happened during deliberations. So, I just want to add one more thing. When the juror starts to talk bias on both sides and business owners, it appears to be that she's going to start talking about the bias that was against the government. She hadn't really talked about that much before. She had talked about more racial bias. So, it looked to me like she wanted to explain the bias on both sides and bias maybe against the government. But at any rate, thank you, your honor. Thank you. Mr. Bryson, you have three minutes. Yes, Judge. Thank you. Your honor, the complaining juror G.D.'s testimony in that case was contradictory. And I'd like to read a question in her answer. The question from the court was, and I guess to put it as plainly as I can, did that instruction produce the desired effect? That is, did it eliminate either race or did it eliminate both race and ethnicity from the deliberations? And juror G.D.'s answer was point blank. I don't think it did, sir. And the court said you don't. G.D. said no. And the court asked her to explain why. And she said, once we started talking, it was evident that some of the jurors, A and B, were still in the thought process that they, the comments that they initially made. So, once we started deliberating, the issue of race came up. But it wasn't as strong as it was when they first made those comments, which is when I raised the issue. I believe the mindset was still there, that there was a race issue. There was a dislike or a distaste, but they went along with the process. And, yeah, so what she's saying is speculating about what's going on in somebody's mind, which she later says in that same colloquy, you know, she can't say for sure. She says, you know, look, some of these jurors, you know, maybe they put it aside, but, you know, maybe they kept it inside. You know, everyone goes over every single piece of evidence. And the conviction, when the district court says, do you think it was based on the evidence? She says, yes. Right? Isn't that the rest of the story? Well, Judge, I think you're correct in saying that she was speculating. She was speculating about all this. And her testimony here is basically testimony about what the other jurors had said, what they thought. And the best evidence wouldn't be her testimony. It would have been what we requested. And that is bringing in those jurors to question them. So we wouldn't have these questions and it wouldn't be an incomplete and inadequate investigation. And every time we asked, we made that request, the government opposed us. And now they sit here and everybody is sitting here speculating because they obstructed and opposed our questioning of these jurors. It was a simple request after overtly racist comments or potentially overtly racist comments were made. And so, Judge, because of that, Mr. Marabal's conviction should be vacated and the entire matter should be remanded back to court for a new trial. Okay, Mr. Bryson, I think we understand your argument and we thank you. We have your case. We'll move to the next case. Thank you, Judge. Thank you. Oh, and you were court appointed, Mr. Bryson. Yes, sir. I want to thank you for accepting the appointment and for helping us this morning. Thank you, Judge.